Case numbers 23-5755 and 23-5756, USA v. Brian Kelsey. Argument not to exceed 15 minutes per side. Mr. Little, you may proceed. May it please the Court. Good afternoon, Your Honors. Alex Little on behalf of Appellant Brian Kelsey. I'd like to ask for seven minutes in rebuttal. Go ahead. Your Honor, in this case, the government breached the plea agreement. They did so at sentencing, drawing into question the benefits that Mr. Kelsey had sought to get through that plea agreement. An objection was raised to what the government did. The Court brushed it off. We're here before you to argue whether or not the breach occurred. Well, when you say an objection was raised, was there a clear objection? Yes, Your Honor. I think taking the entire context of the three lines on page 1145, or sorry, the seven lines on page 1145 of the record, the objection includes what is at issue. As the government says in their brief, I sprang up immediately in response to what had just occurred. The issue was whether the government's conduct had breached the plea agreement. I said specifically why it had breached the plea agreement, because it had advocated for points that they had otherwise disavowed. All of those were contained in the objection immediately after the issue was raised. Not only that, the Court responded to it. The Court responded to it in a manner that reflected and understood all of those implicit parts of what we were talking about. You're talking about when he said, I asked what the government thought? Yes. And, I mean, that's surely an inquiry, right, for purposes of this plea agreement? Well, so is what he's saying he did an inquiry for purposes of the plea agreement? Yes. I mean, tell me if I'm mistaken, but my sense of that, to be candid, is that this is Judge Crenshaw saying that he inquired on this subject. Yeah, and I think if you look at the record, what he said was, hey, do you have anything to say about that objection? That was the inquiry he was referring to. And, obviously, the earlier condition in the agreement, which is that in the event that the probation office or the Court contemplates adjustments other than the ones spelled out in the agreement, that condition is obviously met, right? I mean, probation had actually recommended such an adjustment. Absolutely. I think the issue comes down to how do you reasonably read the statement of any inquiries and appropriate arguments? Well, we have the inquiry, don't we? Or are you disputing that? Well, I think the question is the type of inquiry at issue. And so an inquiry is, in the case law of this Court, when it talks about what governments can do in response to plea agreements— Any inquiry is pretty broad. And it's immediately—Your Honor, if the language stopped there at that sentence, I would agree with you. I mean, it's almost a matter of just sort of identifying what really is the dispute. Oh, sure. Yours is whether this was an appropriate argument. That's exactly right. Yes. And I think you have to read the plea agreement as a whole. And I think the idea that any inquiry could be made that would allow the government to say anything about the plea agreement— If the Court said, you know, I don't care what the plea agreement says. Tell me what you really think, Prosecutor. That would be an inquiry. It would be any inquiry. But this was an inquiry, too. But I would say I think that context demonstrates how it cannot be that the plea agreement would absolutely eliminate the consideration of the defendant if the Court were to make such an inquiry. I don't know. If you have this provision, why isn't that a risk that the defendant takes here? Because it's bounded by all appropriate arguments. There's a difference between what is an inquiry and how you respond to an inquiry. Generally, you inquire about facts, circumstances. Your Honor, like if the Court were to say, you know, this case the defense just relied upon, I think it's been overruled. Is that correct, Government? What kind of relief are you seeking here? I think we're seeking this Court to remand with the direction for the District Court to afford Mr. Kelsey the opportunity to either be sentenced before a different judge or to withdraw his plea. He has indicated— Yes. We're asking not that he go free, but that this case be sent back to the point where he bargained for relief that the Government did not give him. Well, your client, I hope, knows that he might get more time the next time around because if it's all off, the judge and the U.S. attorney gave him quite a bit of leeway in this case, right? Understood. That is certainly the risk. And I think why you see in the case law that most of the time defendants don't take that choice. I don't think it's why there's a great deal of cases where defendants in a breach case say, you know, actually, I want to start over because they bargained for relief they may not get again. That is not this— If we were to think that we should review this only under plain error doctrine, what's the prejudice here? I think it's a very difficult case under plain error. I think that the prejudice would be that the Court heard arguments about the sentencing guidelines that it then says in the record it gave great weight to in rendering the sentence. But it gave a sentence that was much lower than the agreed sentence in the plea agreement. No. There was no agreed sentence. The guidelines were capped at 18. And so— Under the guidelines. Within that range. Within the plea agreement. Yes. There was a guideline range and your client got a sentence that was substantially less than that within that guideline range, correct? Yes. I think it's difficult for us to show prejudice in a plain error world. Okay, and on plain error, I keep coming back to what your objection was where you said, I think the government's come pretty close to violating the plea agreement. That does not sound to me like that was alerting the district judge. And if I stopped there, I would agree with you. My very next sentence was, they advocated for those two points. And then I think the key clause is, they can't do that. When you say in court, I am certainly not perfect, nor are advocates in court responding to things that happen on a moment's notice. But when you tell a district court that what has just happened is something the government cannot do, the district court is certainly on notice as to what issue has been raised before it, which is all that Holguin-Hernandez requires. The court then expressly understood the objection that was being made. That I had said to him, Your Honor, I think what they did violates the plea agreement. And you know that because of his response. And he says, well, no, I think I asked them, so it's okay. The reasonable way to read what he says is, I asked him and that's okay. Which is exactly the argument, substantively, that the government is presenting to you as a basis for upholding this conviction and finding they did not breach the plea agreement. Now, I think in our briefs we've explained why it cannot be under Rule 11, the consideration here is that you get a recommendation from the government. But Mr. Cassidy doesn't want to have a trial, does he? Oh, yes, Your Honor. Is that what he wants? Absolutely. Okay. So that's why he kind of welched on this agreement. He said it's a big mistake and doesn't want to put in a guilty plea, right? Well, yes. I think that I came into this case after that had happened, but the record is very clear that he tried to withdraw his plea. It was denied. And then he proceeded to sentencing, which is where I got involved in the lower court. But what he wanted was to be able to withdraw his plea and take this case to trial. And that is the relief that he's seeking, in part, through this. Which would not have been available under the plea agreement had the government not breached. Here the government went into the sentencing hearing. That's why you're doing this, because it doesn't make any sense from a sentencing standpoint. Oh, Your Honor, I understand that. It's just want to take a shot at a trial. And that's clear on the record. He's moved to withdraw the plea. He wants a trial. So why do you want us to remand to a different district judge? We don't. We want to go. I heard you say that. Oh, no, no. I think that the two available remedies in this circumstance are because the judge has heard things they shouldn't have under the plea, you can remand to a different judge to be sentenced. Or he gets to make the choice to withdraw his plea. This defendant would make the choice to withdraw his plea before the district court when it gets remanded. That's certainly the relief that he seeks. But under Santabello, he has to be given that option, because, as Judge Kethledge is correct, nine times out of ten, 99 out of 100, the choice is going to be, I want to be resentenced somewhere else. Very briefly, I mean, the word arguments is here. Arguments are advocacy in plain speech. And so, again, to narrow your argument, I'm sorry, the dispute here, it would seem like it can only be about the propriety of what the government argued. Because the government is allowed to argue, especially when the judge asks a direct question. And as an officer of the court, you know, and the judge must decide. The government cannot stand there mute, particularly when the agreement allows appropriate argument. So the government presented an argument, and so it would seem like you're just saying it's not appropriate. That's correct. The modifier here is appropriate. It was an argument. And on this point, I don't see any dispute in your brief that your client, as to whether your client committed perjury. One way or the other. I think that's incorrect for a few reasons, but I don't. There's no argument in the blue. that challenges the accuracy or truthfulness of anything the government said in response to Judge Crenshaw's inquiry. That's correct. We could not, as a matter of waiver, and if you'll allow me to answer this, we could not, because we've waived it in the plea, make a substantive argument about the sentence because it was, as Judge Moore pointed out, under the guideline range. Okay. But there is a dispute here. You're correct. We're talking about whether it's appropriate. We're not standing on a sliver of a dispute of some kind. Well, I don't think it's a sliver at all. You've answered my question. You've reserved an extraordinary amount of time. I'll deal with it. So we'll talk about it in your rebuttal. Thank you.  May it please the Court. Ethan Sachs on behalf of the United States. This Court should affirm for three primary reasons. I think we've talked about some of them already today. But the first is that because the government did not breach the plea agreement. Judge Katz, I think your questions are exactly correct so far, that this really turns down on whether this response to the Court's inquiry, which I think everyone agrees was an inquiry from the Court, was appropriate. And I think it's helpful to go through what the actual response was in context. Defense counsel argued to the district court that the obstruction of judgment enhancement could not apply under the case law. We think that's a pretty clear misreading of the case law. So the Court then inquired, well, government, what's your view on the obstruction of enhancement? I think it would be pretty hard to expect the government to sit there in a counterfactual and say nothing. But not only would it be hard for the government, I think it would be really unhelpful to the district court. Because it's left here with what we think is a misimpression of the case law on the key relevant point. Well, if the plea agreement had said the government may not make responses, then you would have to be quiet, right? I think that's correct, yes. But I think 9A and 9C are both equal parts of the plea agreement. Mr. Kelsey is correct that 9A lists certain enhancements that were anticipated or agreed to by the parties in the plea agreement. But 9C is express, that if the Court, or indeed probation, contemplates any additional enhancement or adjustment to the guidelines, that the parties reserve the right to respond with any argument, any appropriate argument. I think one helpful way of thinking about appropriate, and I take their brief to really say that appropriate has to be tied to the other sections, to 9A. But I think that goes against, I know that goes against a clear common law and just basic contract principle that unless a term is defined specifically in the contract, we read the term to have its ordinary meaning. What do you think of the bounds drawn by that word in this agreement? Yeah, so if I could answer that question, I will answer the question. I want to lay out why I think this is appropriate, and I think that helps. Yeah, take your time. One is that it responds directly to an inquiry. This Court's case in Warren found a breach of the plea agreement because, and it noted it was important that the government's response did not come in response to a, or the government's statement did not come in response to a court inquiry. Not gratuitous. Exactly. It's also proportional. If you parse the statement, if you look at the statement, it begins by telling the District Court, you know, under the plea agreement and under Rule 11, we defer to the Court on the ultimate decision on this enhancement. So it laid clear our obligations. It was proportional in that it didn't go on. It didn't use any inflammatory language. You know, if we had said we urge the Court to do this because this obstruction is one of the worst things a defendant can do, if we used really any inflammatory language like that, I think that would be easy, and we have no such language here. We also, I think it's important to look at the statement, really is mostly comprised of what are just a basic reading of the commentary of the law. I don't think that's, anyone could argue that that is an argument. That's just a basic statement of what the law is. You know, I mean, you know, to put it in a concrete context, I mean, the question here is whether perjury amounts to obstruction, right? Yes, Your Honor. Is that fair? Yes, and we think. I mean, this is not, you know, some really hard, it's not a stretch. No, not at all, Your Honor, and I think, you know, that is part of the reason that we just read the clear law to the Court, summarized a couple of key facts in two sentences, and summarized that and say, so it applies here. There isn't, I mean, to the extent there's argument, and we don't think there is any argument in our response, it's those last seven words, and by no means do we think that that could be understood as an inappropriate argument. Read those words again. I can read it. I want to make sure I read it accurately to the Court. There we go. There you are. So it goes through the factual statements that Mr. Kelsey made that were perjurious, and we say those were perjurious, and support application of the two-level enhancement. It's those, I think that's seven words, maybe eight words, and as I mentioned before, it's proportional. Is that different than you're saying, and we encourage the Court to apply? We think it is meaningfully different. To say that you support it? Yeah, I understand that those words may have similar meanings in any, you know, theoretical context, but I think here, it's not just what we're looking at. We're looking at the entire context, and reading the law in a non-inflammatory passion, just straightforward, reading the facts, not going on and on about the facts, but reading the key facts, and just saying it supports. I think that's the closest thing that comes to an argument, but I don't think it is an argument, and if it is, if Your Honors disagree with that, it's certainly an appropriate argument in our view. I mean, it's a legal conclusion, you know. That's right. If I recall correctly, you don't actually request. That's correct, and not only do we not request, we make clear to the District Court, both at the sentencing hearing and in the papers we submitted leading up to the take a position on the enhancement, because the plea agreement lays out the enhancements or credits that are called for in 9A. Do you think that we should be reviewing this under plain error or not? Yes, we do think this is a plain error review. We want to make it clear that we think we have the, we win, frankly, under de novo or plain error review, but we do think that this is a plain error case for the simple reason that counsel's statement of it comes pretty close, what the government said has come pretty close to a breach. We appreciate that there doesn't need to be magic words for there to be an objection, but the words said do matter, and saying something comes pretty close to a breach is just not a breach. That's not all he says. I mean, Mr. Little said they can't do that, as he mentioned today. Fair enough, Your Honor. Do you think Judge Crenshaw was not aware of an objection here? I mean, why would you persist in that argument, given the totality of the record here? Sure. No, we think it's actually much cleaner to look at just what the record of the language of the plea agreement says and what our conduct was here. We stand on that 100% and think there was no breach. That's why I've focused. Oh, I get that. I just, you know, I mean, what's missing here? I mean, I know they said up to the line, but, you know, looking at the whole thing, they're obviously very happy and they say you can't do that, which means you tripped some wire legally, right? Yeah, I think I would just point out what Puckett says, and I believe it's either footnote 2 or footnote 4, I'm forgetting at the moment. But Puckett is a case pretty similar to this, and it really lays out the harms that come when a party doesn't make a clear objection before the district court. Chief among them is no one can cure if there is supposedly a breach. I mean, the government counsel could have said that's not at all what I intended to do had the objection been clear. The court could have clarified I did not take it to be that, or the reverse if for some reason it had been that. You know, I think it just helps clarify things. Like Puckett lays out pretty clearly if it's articulated in the moment clearly. But again, I just want to emphasize our lead argument here is that we think we did not breach the plea agreement. We think we abided by the language. When did you first learn that they were going to bring this up on appeal and say it's a error, plain error, or whatever kind of error it was? After sentencing? I was in trial counsel, so I'm not sure if there was discussion, but from the record, the earliest I can tell is the motion to withdraw, or excuse me, no, the bail pending appeal hearing motion made clear that that was the reason. But I can't swear to that, Your Honor, because I was in trial counsel. And the bail pending appeal hearing is outside the record that was in front of the district judge when he was doing the sentencing. Well, respectfully, Your Honor, we don't think it is necessarily in this case because what we cited in our brief is just the statements that the district court itself made at the bail pending appeal hearing. We acknowledge that there's case law saying materials that weren't submitted until the judgment was entered by the district court are not considered part of the record for Rule 10. We think those cases, and Mr. Kelsey cites some of those in his brief, make pretty clear that it's referring to things like exhibits that weren't presented to the district court, attached to a complaint or something like that, and then a party tries to append or something to its appellate brief. The purpose, as we understand Rule 10, is to prevent an appellate court from ruling on an issue that a district court didn't have before it. We don't really see how that could apply to what the district court itself said. If the district judge makes comments after the fact, the district judge could be trying, hypothetically, to couch a mistake that the district judge had made earlier in a different light. So really, shouldn't we be addressing what happened at the sentencing itself, what was said by each side, what was said by the district judge? Yes, Your Honor. We appreciate that point. We don't think there's any evidence that that was happening here, but we understand that if that were the rule, that could become incentive, so to speak, for a district court judge. We appreciate that, and we think it's fine to look at what was just said at the sentencing hearing. We think it adds color. This court has called it, I think it's the person in the room, in a somewhat recent case, didn't take it to be an objection. We think that's helpful that the court itself was saying that, but we don't think it rises or falls on that. We think it's really what was said in the moment, and we're not suggesting that you defer to the district court's rule as some legal matter or a factual finding or anything like that. We think it's just helpful color here, but again, it's focused on what was said or not said at the sentencing. In trying to look at the transcripts at the sentencing, when the defense counsel says, I think the government's come pretty close to violating the plea agreement, is there then an exchange that involves the district judge and the government and defense counsel on whether there was a breach of the plea agreement? Yes, Your Honor. I think what my opposing counsel this morning read to you is an accurate reflection of what the record of the sentencing hearing shows, but one thing I think is helpful to think about is there are arguments in the brief, in the reply brief, for why there was a legitimate objection here, was because you could look at what the district court said in response, and it was I asked him something to the effect of I asked him that question. And so that to me narrows what they think the objection is to that first statement, because if it's eliciting this response from the district court judge, it has to be in their terms the objection. And we don't think it shows that. So that's just it's come pretty close. I understand what you're saying. I mean, because we've walked through all these different components of the analysis under the language, and I think it's fair to say we've identified propriety as the issue. The judge's comment goes to inquiry. So, I mean, what are your thoughts about whether Judge Crenshaw was alerted to a potential objection as to the propriety of what the government had said? Well, I would just focus on the words that were actually said by Mr. Kelsey's counsel. And I'm not trying to parse language to finally hear or find magic words, but we really think it's something telling by saying the government's come pretty close to breaching the plea agreement. I mean, in a court proceeding, this is one example. If government, not in this case, but in a hypothetical case in a closing argument presented to the jury, the defendants come pretty close to violating the statute. I mean, I think that may be a directed verdict for the defendant, right? Of course, you have to say he actually violated the statute. And here, you have to make clear that there was a breach if that's what the defense believed would happen. But, again, I think plain error makes this an especially easy case for us, but I really think that it can be resolved de novo if the court wants to just look at the plain language of the plea agreement, and I think we abided by it completely. One thing I just want to make sure I mention to the court before I sit down is that this court's case law and the case law of all the circuits that I could find is, if you disagree with us as to the breach and the plain error issue, the remedy is for the district court to decide. And the district court has two options under Sanibello. It can order specific performance, which would then require sentencing by a different district court judge, or it can permit withdrawal of a plea agreement. But it's to be remanded to the same district court for it to make that determination, and then it takes the evidence or whatever it needs to make its decision, which the parties can present argument on it, and then it can determine that issue. Assuming that that's what we were going to do, what should the district judge getting the case on remand be looking at to decide which remedy to pick? Sure, and I'll answer your Honor's question to be clear. We think you don't need to remand, but if the court does remand, well, I think one thing to certainly focus on in the case law I think permits this is the equities involved here. And the only obstruction enhancement is really the only thing we're talking about here. And that came to be only because Mr. Kelsey admitted under oath to misrepresenting to the court and apologized for doing that. And so I don't think there's any way that the equities could turn in favor of rescission here. That's one of the main things we think the district court would be considering if the court remanded. I see I'm out of my time. So Your Honor, if you have no further questions, we ask that you affirm. Thank you. Let me start with the remedies question. In going back to the district court, basic contract principles would apply. There's Tennessee state case law on this. There's Sixth Circuit case law on this. An individual who's been aggrieved by the government's misconduct, it's not just about whether the obstruction enhancement applies. It's about whether the government has adhered to meticulous standards of performance. That's what they're supposed to do. That's what the district court should do. Even if there's no harm? Absolutely. I mean, just as a substantive matter, do you have any position here or do you take the position that the enhancement, setting aside the agreement itself, the enhancement was proper on this record? I think the court could find that it was proper on this record. How could it find otherwise? I think there were some arguments we made below that I certainly haven't presented here as to how it may not be. I mean, I think this is a circumstance where the court actually found that it was perjury to say that he was guilty and the court actually found that he was telling the truth when he said, I didn't do it. And so that's, I think, a little bit unusual circumstance here to apply an obstruction because you lied originally about doing the crime but then told the truth when you said you didn't, which is what the court actually found on this record. So I think it may be an unusual circumstance to apply an obstruction to find somebody who, for reasons they felt compelled to, pled guilty and then later said, actually, I didn't do it. So it's an unusual obstruction case. It's not nearly as straightforward. But let me address the bigger issue as to what I understand, Judge Kethledge, your issue is as to that language. The language in paragraph 9C fits within a structure that is bounded. Yeah, I've read that argument. But it's bounded by Rule 11. Brian Kelsey got two agreements. We're going to dismiss some counts and we're going to agree about what we're going to say and not say about certain enhancements. The government could have put other things in, could say, look, if you do this or do that, we're not going to make those recommendations. It didn't say anything like that. And what happened was it was upset. You can make appropriate arguments if the court asks you about it. Everybody, eyes open. If the court asks, you can answer appropriately. And you can make an argument. But I think what's appropriate there is not just whether it's, I mean, the idea that somehow the argument was, well, whether it's, you know, it's an argument that may be inflammatory. That's not at all what the plea agreement talks about. They offer the court a legal conclusion in response to the court's question about whether the guideline is applicable based on this record. I mean, the government, the lawyer is an officer of the court. The court must make the decision as the agreement itself recognizes. The court asks a specific question. The government gives a reasoned conclusion in which it does not request anything. How in the world is that not an appropriate response? Because it applies in the face of what defendants do every day. They get a B agreement. The purpose of a B agreement is government, you may think this applies, but you've bargained away your ability to tell the court that it applies. So, I mean, is it your position is the government should have said, Your Honor, I'm not permitted to answer your question. Well, the question is whether you have. Is that a fair assessment? It's a question about something outside of facts or what perhaps there's been. We know what the question was. You know, he's basically asking, do you think this applies? And the issue is. And is your position that the government was obligated to say, Your Honor, I cannot answer your question. Absolutely, because we gave it away at the plea agreement. Okay, that's clear. We gave it away at the plea agreement. And, Your Honor, there are so many times in plea negotiations where the government may want to argue for it. And if they think that as long as, it's not just the court, as soon as they go to a probation interview and that probation officer thinks, Hey, what do you think the guidelines should be? At that point, under the language you're talking about, that provision is an inquiry. I'm just looking at this record. But, Your Honor, that's going to happen in every case. It happened here as well. The first thing. Case is based on the record. And in this record, the probation office found that the two points should apply. And there was a back and forth. And the first thing the government said on this record was, We can't argue for those points because we're precluded by the plea agreement. They said that again in the memorandum on plea agreement points. We can't say that because we're bounded by the plea agreement. We can't gratuitously argue. Well, I mean, I understand your position. I do. And I get it on this. The question is whether it's right, but I understand your argument. But I think the good news for us and our position is, under Monsivius, under the case law of the circuit, if it's ambiguous, you must construe it in a manner that reasonably can be read by the defendant. And the government's never argued that it's unambiguous. Because here, we're not just construing a contract, and the question isn't just whether one interpretation or another is right. It's what did this defendant reasonably believe when he gave up his rights. And defendants in the middle district for decades have reasonably believed that when you get a plea agreement, if probation of the court come up with other guidelines and say, what do you think, that that doesn't just immediately eliminate that consideration. If that were the way this agreement operated, it would have to be that this court takes the position that defendants have thought it was in their best interest to enter an agreement repeatedly. We have prior case law we show where they've done this. I want to follow up on a line of questions that Judge Moore was asking earlier about preservation. Yes. So I understand your argument. I mean, I had that exchange with the government. But as we're developing this today, I mean, your objection is a very specific one about propriety. We've gone through everything else. And those are not the grounds. It's not whether the court inquired, et cetera. It's about propriety. And I don't see any, I mean, explain to me how you alerted or your predecessor alerted Judge Crenshaw to that problem. Because I'm having a hard time seeing how Judge Crenshaw had an opportunity in the moment to pass upon the argument you've been making to us in this appeal. It's there plainly. It was me for this part. I was there for sentencing. Okay. It's plainly the second sentence that I say. I say that they are advocating for those two points, and they can't do that. And by arguing that they cannot advocate, advocate is a type of argument.  It's the second. Well, you and I agree on that point. So it's the second sentence. Okay. That's a good answer. Although in that second sentence you say it sure sounds like they're advocating. Your Honor, I think that sometimes. That's close enough. I certainly think so. I mean, you know, in this Court's case laws we have, there's I think Ligon or another case where the counsel says, you know, I believe that may be this, or I believe it may be that. Qualifiers like that are sort of common parts of speech, especially sometimes when you're trying to be deferential to a district court judge. This has been a case that was contentious around some issues. And I think how you, you know, speak in that way certainly gave the judge an understanding that my concern was that they were advocating for those two points, and they could not do that. So the issue was preserved. And because all we have to show is that the agreement is ambiguous and could have. Did you need to argue at that point that you, that the government had violated the plea agreement and that you wanted to withdraw the plea? I think that by saying that they can't do something under the plea, it's implicit that that's a violation of the plea agreement. I don't know what other. But you didn't say, and we want to withdraw the plea at that point. No, Your Honor. But the same way if I make an evidentiary objection, Your Honor, I object to that evidence and it comes in, I don't have to say, and by the way, if this evidence comes in, I think I should get a new trial. It's sort of, you know, if the court says, and here the court said I don't think it's an error, there's no reason to get into remedy. Even though here, though, once he said I don't think it's an error, I immediately followed up with, but Your Honor, just because you asked them to violate the plea agreement doesn't mean they don't violate the plea agreement. You can't just, you know, give them a free pass, which is the same arguments that we're presenting to you here. Governments have an obligation to meticulously adhere to the plea agreement. That itself, without anything else for harm, is harm when they don't do that. Brian Kelsey didn't get that bargain. He should get it below. Thank you. Thank you. Thank you both for your argument, and the case will be submitted.